UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| M. HILDA WILSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-cv-544-DBH |
| | ) | |
| JOHN A. BODNAR, UBS FINANCIAL | ) | |
| SERVICES, INC. and MORGAN | ) | |
| STANLEY & CO., INC. | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT &
RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS AND TO
<u>COMPEL ARBITRATION, WITH MEMORANDUM OF LAW</u>**

Plaintiff, pursuant to 28 U.S.C. 636(b)(1)(C) and Local Rule 72.1, hereby objects to and

requests review of the Magistrate Judge's Report and Recommended Decision ("R&R") on

Defendants' Motion to Dismiss and to Compel Arbitration.  In support of these objections,

Plaintiff submits this Memorandum of Law.

**Preliminary Statement**

In this case, Plaintiff respectfully submits that Magistrate Judge Rich erred in

recommending the granting of Defendant Morgan Stanley's Motion to Dismiss, recommending

the granting of the other Defendants' Motion to Dismiss as to events before September 22, 2003,

and in recommending that the Motion to Compel arbitration be granted.  In particular, the R&R

erred:

1.      by failing to apply 14 M.R.S.A. § 859;

2.      by failing to properly apply Federal Rules of Civil Procedure 12(b)(6) & (9);

3.      by failing to examine the doctrine of laches in lieu of the statute of limitations;
        and

4.      by concluding that the Motion to Compel Arbitration should be granted.

**Statement of Facts**

Plaintiff's statement incorporates the facts asserted by reference in the Amended Complaint, as well as the summary recited at pp. 2-8 of the R&R.  Plaintiff also references the Exhibits to the Complaint, and the Affidavits of Mr. O'Keefe and Ms. Wilson, which were not referenced in the R&R.

**Standard of Review**

When objections are filed to a magistrate judge's R&R, a judge of the district court is to "make a *de novo* determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) (emphasis added).  In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs.  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  When the complaint relies upon a document whose authenticity is not challenged, such a document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); accord Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations).

The applicable standard of review on a motion to dismiss is highly deferential to the plaintiff. The Court "must accept as true all the factual allegations in the complaint." Goodman v. President & Trs. of Bowdoin College, 135 F. Supp.2d 40, 43 (D. Me. 2001) (quotations omitted).  With respect to Rule 9's requirement to plead fraud with particularity, the plaintiff need only plead "the time, place,

2

and content" of the representations alleged to be fraudulent, such that the defendants have notice of the alleged actions that form the basis of the plaintiff's claims.  See id. at 59 (quotations omitted).

**Argument**

1. **The Magistrate Judge Erred by Refusing to Apply the Limitations Period in 14 M.R.S.A. § 859.**

14 M.R.S.A. § 859 states as follows:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has a just cause of action, except as provided in section 3580.  [Fraudulent Transfer Act, not applicable here.]

Thus, if fraud has been committed under the circumstances described in section 859, a civil action may be commenced within six years of ***discovery*** of the fraud.  The issue of the time of discovery is a question of fact.

A primary conclusion of the R&R, at p. 10, is that 14 M.R.S.A. § 859 did not apply because Plaintiff did not allege that "any of the defendants **actually withheld** facts necessary to inform her of the existence of her cause of action."  The R&R also asserts, at p. 11, that Plaintiff failed to allege "due diligence, a **necessary element** of the fraudulent concealment exception to the statute of limitations."

In Capozza Tile Co. v. Joy, 2001 U.S. Dist. LEXIS 14447 at *19-20 (D. Me. Sept. 13, 2001), the magistrate judge denied the defendants' motion to dismiss using the proper legal standard under 14 M.R.S.A. § 859.  As here, the Motion to Dismiss asserted plaintiffs' state law fraud claims were barred by the six-year statute of limitations.  The judge disagreed and stated:

> Because the statute of limitations is an affirmative defense, a complaint will not be dismissed, pursuant to Rule 12(b)(6) as time-barred unless the **complaint contains within its four corners allegations of sufficient facts to show the existence and applicability of the defense**. . . .  Here, the allegations allow the drawing of the reasonable inference that the **plaintiff did not discover the causes of action, and could not have discovered them . . . until a point fewer than six years before this action was brought**.

Id. (emphasis added).  Unlike the holding in Capozza, the R&R in the instant case improperly places the burden of disproving the affirmative defense on Plaintiff, at the Rule 12(b)(6) stage, before any facts have been developed.

14 M.R.S.A. § 859 applies when either: "(1) . . . defendants actively conceal[] material facts from plaintiff and . . . plaintiff relie[s] on their acts and statements to her detriment; or (2) . . . a special relationship exist[s] between the parties that impose[s] a duty to disclose the cause of action, and . . . defendants [fail] to honor that duty."  Harkness v. Fitzgerald, 1997 ME 207, ¶ 6, 701 A.2d 370, 372; Seigemund v. Shapland, 247 F. Supp.2d 1, 7 (D. Me. 2003).  Both scenarios have been sufficiently pleaded in the Amended Complaint.

**a.    Fraudulent Concealment**

The R&R ignores numerous allegations of fraudulent concealment contained in the Amended Complaint and supporting documents:

> ¶ 6 (Defendants fraudulently concealed wrongful conduct as set forth in complaint);
> ¶ 7 (Continuing fraud);
> ¶ 45 (Bodnar discouraged questions, constantly reassured plaintiff, and encouraged trust);
> ¶ 51 (Plaintiff "didn't need" paperwork, and should throw it away);
> ¶ 52 (Bodnar fraudulently recommended life insurance premium of $100,000 per year for six years, when liquid net worth **was only $700,000)**;
> ¶ 53 (Plaintiff did not know **until 2005** that Bodnar received a commission up to 50% on a 100,000 life insurance premium).
> ¶¶ 70-74 (Misrepresentation, deception, intentionally acting to keep plaintiff ignorant, Fraud Claim, Count 1);
> ¶ 79 (Continuing, Deceptive management of accounts, Unfair Trade Practices);
> ¶¶ 89-96 (Churning Claim, Count 4);
> ¶¶ 96-100 (Unjust Enrichment, Count 5);
> ¶¶ 104-08 (Misrepresentation Claim, Count 7).

On pp. 10-11 of the R&R,  several cases are cited to assert that Plaintiff failed to allege the "necessary elements" of fraudulent concealment, namely that defendants "actually withheld facts necessary to inform her of the existence of her cause of action," and that "Plaintiff exercised due diligence with respect to her investments."  In Seigemund, an heir's bare allegations that the defendants fraudulently concealed the claims were sufficient to survive a

motion to dismiss.  Id.  The plaintiffs in that case alleged that the personal representative had a fiduciary relationship with them and breached his fiduciary obligations by withholding information relating to the physical and financial mismanagement perpetrated by the two guardians.  Id.  The plaintiffs also alleged that the two guardians similarly breached their fiduciary duty by "failing and refusing to properly disclose medical records, financial records, court records, and other information for the purpose of concealing their misdeeds," contributing to the fraudulent concealment of the plaintiffs' claims.  Id.

The Seigemund Court, citing Harkness, stated that in order to establish a claim of fraudulent concealment, a plaintiff must allege, and later prove, the defendants' active concealment of facts and the plaintiffs' reliance on the defendants' action to their detriment, or that a special relationship existed between the parties that required disclosure of the cause of action and the defendants did not honor their duty.  Id.

Seigemund did not require, as the R&R suggests, active concealment **even when** there is a special relationship.  Instead, under Seigemund, a plaintiff need only allege one or the other— active concealment, or violation of a fiduciary duty to properly disclose required information.

In the case at bar, the Amended Complaint actually meets the R&R's erroneously heightened standard, especially when supplemented by the O'Keefe and Wilson Affidavits, referenced in the Amended Complaint and supplemental documents.  It easily meets the proper Seigemund standard.

### b.    Confidential Relationship

The R&R largely ignores the role of the "special relationship" that has been alleged in the Complaint.  In Anderson v. Neal, 428 A.2d 1189, 1192 (Me. 1981), the Law Court extended the limitation period in a legal malpractice case, reasoning that that the plaintiffs were not in a position to discover negligent title work performed by their attorney.  The Law Court held that the attorney's expertise, and the clients' required reliance upon the attorney, made the discovery of a judicially

5

cognizable cause of action unlikely.  Id.  The Court stated that the reliance and trust placed with

fiduciaries (such as attorneys) and a plaintiff's lack of means to discover injuries is akin to a

fraudulently concealed cause of action.  Id.  The same rationale, against a brokerage owing fiduciary

duties to Plaintiff, calls for denial of the Motion to Dismiss in this case.

Here, Plaintiff has alleged that she was in a confidential relationship with Defendants.  See

Amended Complaint, ¶¶ 5, 10, 11, 14, 82-88 (Count 3, Fiduciary Duty Claim), 96-100 (Count 5,

Unjust Enrichment Claim).   She also alleges she signed a written Fiduciary Trading Authority, giving

sole control and discretion to Defendants to manage her financial assets.  Id. ¶ 62.  A confidential

relationship is one in which an individual places trust and confidence in the defendant, and there is a

great disparity of position and influence in the relationship.  See Ruebsamen v. Maddocks, 340 A.2d

31, 34, 36-37 (Me. 1975).

When a plaintiff can show a confidential relationship under Maine law, the burden shifts

to the **defendant** to show the transaction was fair and free of undue influence.  Id. at 36; see also

Theriault v. Bunhham, 2010 ME 82, __ A.2d __.  In Theriault, the Law Court determined that

the superior court correctly gave the following jury instruction:

> If Clem Theriault shows by a preponderance of the evidence that Kenneth
> Burnham had a confidential relationship with Helen Dingley then undue influence
> is proven unless Kenneth Burnham proves by a preponderance of the evidence . . .
> that undue influence did not exist.

 Id. at ¶¶ 4, 11.

A fiduciary who makes a profit or gain holds the gain in constructive trust.  Tarbox v.

Tarbox, 111 Me. 374, 89 A. 194, 197 (1914); Restatement of Restitution § 197 (1937); 76 Am.

Jur.2d Trusts § 232 (1975); Desfosses v. Notis, 333 A.2d 83, 88 (Me. 1975) (agent who secretly

retained purchase price was obliged to make restitution).

In the instant case, since a confidential relationship exists, undue influence is presumed

by operation of law.  The Affidavit of Mr. O'Keefe, referenced at ¶ 48 of the Amended

Complaint, indicates that unlawful self-dealing was taking place by Plaintiff's fiduciary, and was

6

being concealed from the Plaintiff.  Just as with plaintiff in <u>Anderson</u>, the extent and scope of fraud could not have been discovered without the relatively recent forensic analysis described in the Affidavits.

      **c.     Due Diligence**

At p. 11, the R&R, citing <u>J. Geils Band Employee Ben. Plan v. Smith Barney Shearson Inc.</u>, 76 F.3d 1245, 1255 (1st Cir. 1996), and <u>Kobritz v. Severance</u>, 2007 ME 3, 912 A.2d 1237, suggests that Plaintiff did not properly allege due diligence with respect to her investments.  <u>J. Geils</u> addressed a different statute of limitations, under ERISA, 29 U.S.C. § 1113, in the context of a summary judgment motion, not a Rule 12(b)(6) motion.  In <u>Kobritz</u>, the court deferred to <u>Anderson</u>:

> We have articulated the rationale behind section 859 as "legislative recognition of the fact that dating accrual of an undiscoverable cause of action from the time of injury works an injustice on injured plaintiffs."  The statute of limitations begins to run, pursuant to section 859, "when the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence."

<u>Id.</u> at ¶ 13 (internal citations omitted).

Due diligence is a question of fact.  The R&R ignores an explicit allegation of due diligence in ¶ 8 of the Amended Complaint, in which Plaintiff alleges that she "justifiably relied to her detriment" on the false statements and misleading conduct of Defendants.  A primary purpose of the attachments to the Amended Complaint, and the Affidavit of Mr. O"Keefe, was to show that she acted reasonably, and that the complex nature of the fraud was very difficult to discover.  Given the express allegations in the Amended Complaint and the Affidavit incorporated by reference therein, the due diligence finding is erroneous.  Additionally, under <u>Theriault</u>, the burden of proof shifts to defendants when a confidential relationship exists.

**2.     The Magistrate Judge Erred by Failing to Properly Apply Standards Set Forth in Federal Rules of Civil Procedure 12(b)(6) & (9).**

In the instant case, the language of the detailed complaint contains a host of allegations sufficient to allege fraudulent concealment.  See e.g. Amended Complaint ¶¶ 46-79. Alternatively, the Complaint's exhibits and the Affidavits of Hilda Wilson and Michael O'Keefe establish the facts necessary to allege fraudulent concealment.  These documents were not challenged and were in fact explicitly referenced in the Amended Complaint.

In Alternative Energy v. St. Paul Fire, 267 F.3d 30, 33 (1st Cir. 2001), the First Circuit held that the district court properly considered a  Settlement Agreement in ruling on the defendant's motion to dismiss.  As noted by the court, the purpose of a motion to dismiss "is to determine whether the complaint alleges facts sufficient to state a cause of action."  Id. at 36 (internal quotations omitted).

Here, it is clear that fraudulent concealment, and the necessary elements to support it, have been properly alleged.  The fraudulent concealment allegations are set forth in ¶¶ 45-57 of the "Amended Complaint," as well as the supporting Exhibits 1-3, attached to the Amended Complaint, and the Affidavits of Michael O'Keefe and Hilda Wilson filed previously (including the specific reference to the O'Keefe Affidavit set forth in ¶ 48 of the Amended Complaint).

**3.    The Magistrate Judge Erred by Failing to Apply the Doctrine of Laches**

In Van Dam v. Spickler, 2009 ME 36, ¶ 12, 968 A.2d 1040, 1044, the Maine Law Court examined the doctrine of laches:

> Laches will bar a claim of specific performance where "the omission to assert a right for an unreasonable and unexplained length of time . . . has been prejudicial to an adverse party, [such that] it would be inequitable to enforce the right. . . ." Additionally, "[a] party is as much open to the charge of laches for failure to prosecute a case diligently as for undue delay in its institution. . . ." Whether the equitable doctrine of laches bars a claim is an issue of law that we review de novo. . . . However, we review a trial court's factual findings for clear error.

In this case, the equitable doctrine of laches was not examined by the R&R, despite the existence of many equitable claims in the Amended Complaint.  The elderly Plaintiff has alleged she acted reasonably after the existence and extent of the self-dealing was brought to her attention in 2005

through 2008.  See, *inter alia*, Amended Complaint ¶ 8.  In 2005, Mr. O'Keefe reviewed the statements after long delays and foot dragging by Defendants.  An economist was then hired to calculate damages in 2007.  Thus, Ms. Wilson discovered the massive extent of the fraud only in late 2007, or early 2008.  Under 14 M.R.S.A. § 859 and the doctrine of laches, the facts alleged in the Complaint suggest that the case should move forward.

**4.      The Magistrate Judge Erred by Concluding that the Motion to Compel Arbitration Should be Granted**

The first step in resolving the motion to compel arbitration is to determine whether parties to a contract actually agreed to arbitrate.  Graham v. Smith, 292 F. Supp.2d 153, 156 (D. Me. 2003), citing Intergen v. Grina, 344 F.3d 134, 142-43 (1st Cir. 2003) ("It is bedrock that arbitration is a matter of contract and that a party cannot be required to submit to arbitration any dispute which he has not agreed so to commit.") (internal quotations omitted).  An arbitration agreement is governed by state law.  Graham, 292 F. Supp.2d at 156, citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Maine requires clear contractual language, evidencing an intent to be bound to arbitrate.  Me. Cent. R.R. v. Bangor & Aroostook R.R., 395 A.2d 1107, 1116 (Me. 1978).  The question of arbitrability is for the court.  Graham, 292 F. Supp. at 156 n.3.  The arbitration forms attached to the Goldman Affidavit are insufficient as a matter of law to serve as a binding contract to arbitrate.  They were not signed by Bodnar, and fail to show that Bodnar or the other Defendants ever agreed to arbitrate breach of fiduciary duty claims with Plaintiff.

The R&R simply dismissed the objections to the language in the arbitration form.  However, the contractual language in the arbitration form must be examined under Me. Cent. R.R. and its progeny.[1]  In Graham, 292 F. Supp. 2d at 156, the court found that neither Graham nor Shane signed

---

[1] The archived, barely legible form unearthed by the defendants, as evident from Exhibits 2 and 3 of Mr. Goldman's Declaration of March 31, 2010, has not yet been established as a binding contract.  Much of the front of the document is illegible.  The checklist on the top of the form in Exhibit 2 indicates it is an "existing account," not a "new account."  The terms of the actual account agreement are unknown.  The date of acceptance is also unknown, and some of the signature

9

the subject arbitration documents in a personal capacity, and concluded that both had a "very strong case" that the agreements at issue did not bind them to arbitrate.  As with any contract to arbitrate, the burden is on the proponent of arbitration to show clear contractual language indicating an intent to arbitrate.  Id.

A related issue, the absence of mutuality of obligation, was not fully examined in the R&R, but was addressed in McCarthy v. Azure, 22 F.3d 351 (1st Cir. 1994).  In that case, the First Circuit held that when (a corporate officer signed an agreement with an arbitration clause not compelled to arbitrate because although the purchase agreement contained an arbitration clause, it did not extend the right to compel arbitration to agents or employees of the corporate signatory, nor did it manifest an intention to confer third party beneficiary status on any such agents or employees.  Id. at 356-59.)

The Affidavits of Ms. Wilson and Mr. O'Keefe also make clear that Goldman Exhibit 2, allegedly signed by both parties on October 13, 1999, was the product of fraud and fraudulent concealment, and thus unenforceable *ab initio*.  Since the Affidavit and Complaint allege that Bodnar and the other Defendants were actively concealing their fraud during this period and for years earlier, the agreement is unenforceable under state law.  Maine courts do not enforce illegal contracts.  See, e.g., Allstate Ins. Co. v. Elwell, 513 A.2d 269, 272 (Me. 1986); Lehigh v. Pittston Co., 456 A.2d 355, 361 (Me. 1983).

### Conclusion

Defendants' Motions to Dismiss and to Compel Arbitration should be denied.


Dated:  September 24, 2010                              **    /s/ Peter Clifford     **
                                                       Peter Clifford, for Plaintiff

---

lines appear to be blank.  Similarly, the "Certification, Acknowledgement and Signature" section, section D, on p. 1 of Goldman Exhibit 2, makes reference to terms of arbitration described in an accompanying "Account Agreement," a document that was not produced.  It is also unclear whether p. 2 of Goldman Exhibit 2 has any connection to p. 1 of that exhibit.  Page two starts with paragraph "7," but there does not appear to be any reference to paragraphs 1 through 6 anywhere on Goldman Exhibit 2.

## CERTIFICATE OF SERVICE

I, Peter Clifford, hereby certify that on this 24th day of September, 2010, the foregoing document was filed through the ECF system.  The document will be sent electronically to the registered recipients, and paper copies will be served via first-class mail on those indicated as non-registered participants.

**_____/s/ Peter Clifford_____**